| | |
|---|---|
| Kelli Jo Torres, | **Civ. Case No 20-cv-1092 DSD/ECW** |
| Plaintiff, | **FIRST AMENDED COMPLAINT** |
| v. | **Jury Trial Demanded** |
| Dallas Hamm, Shelley Douty, and Rock County Sheriff Evan Verbrugge, all in their individual and official capacities, and Rock County. | |
| Defendants. | |

Plaintiff, Kelli Jo Torres, by and through her undersigned attorneys of record, demanding trial by jury of all claims properly triable thereby, for her complaint against Defendants above-named, complains and alleges as follows:

## STATEMENT OF CLAIMS

1.     Plaintiff seeks money damages and equitable relief from Defendants Dallas Hamm, Shelley Douty, Evan Verbrugge, and Rock County for violating her rights under the U.S. and Minnesota Constitutions as well as Minnesota state tort law.

2.     More specifically, Defendants Hamm and Douty, while acting as law enforcement officers employed by Defendant Rock County and supervised by Defendant Verbrugge, subjected Plaintiff to an unlawful roadside stop that resulted in a prolonged seizure, strip search, and body cavity search.

3.     The Defendants' unlawful conduct violated Plaintiff's rights under the Fourth and Fourteenth Amendment to the U.S. Constitution, Art. 1 § 10 of the Minnesota

Constitution, and Minnesota state tort laws. Plaintiff sues under 42 U.S.C. § 1983 in order to hold Defendants accountable for their unlawful actions, to seek justice for herself, and to prevent similar unlawful actions from occurring in the future.

## JURISDICTION

4.      This Court has jurisdiction over the claims in this Complaint pursuant to 28 U.S.C. § 1331 (federal question), 28 U.S.C. § 1343 (civil rights), and 42 U.S.C. §§ 1983 and 1988.

5.      This Court has supplemental jurisdiction over the pendent state law claims pursuant to 28 U.S.C. § 1367.

6.      This action arises under the U. S. Constitution, as applied to state and/or local authorities through 42 U.S.C. § 1983.

7.      This Court has authority to grant declaratory relief under 28 U.S.C. § 2201.

## PARTIES

8.      Plaintiff Kelli Jo Torres is a 38-year-old woman. She currently resides in Jackson County, Minnesota.

9.       Rock County is a municipal and political subdivision of the State of Minnesota that can sue and be sued in its own name.

10.     Defendant Sheriff Evan Verbrugge was, at all times relevant, the Sheriff of Rock County.  He is sued in his personal, official, and individual capacities pursuant to Minn. Stat. § 466.01 *et seq*. and other applicable law.

11.     Defendant Dallas Hamm was, at all times relevant, a deputy in the Rock County Sheriff's office. He is sued in his personal, official, and individual capacities pursuant to Minn. Stat. § 466.01 *et seq.* and other applicable law.

12.     Defendant Shelley Douty was, at all times relevant, a deputy in the Rock County Sheriff's office. She is sued in her personal, official, and individual capacities pursuant to Minn. Stat. § 466.01 *et seq.* and other applicable law.

13.     All individuals named as defendants in this complaint were law enforcement officers, agents and/or employees of Defendant Rock County and were, at all times relevant to this complaint, working as on- or off-duty licensed Minnesota peace officers acting under color of state law and within the scope and course of their official duties and employment as officers of the Rock County Sheriff's Office.

## FACTS

14.     The violations of Ms. Torres's rights began on November 27, 2018. She was a passenger in a car driven by Derek White through Luverne, MN. Defendant Hamm followed Mr. White's car for several minutes before pulling it over on the on-ramp to I-90 East because there was an air freshener hanging from the car's rearview mirror.

15.     Defendant Hamm asked Mr. White for his driver's license and proof of insurance. While Mr. White was locating the requested documents, Defendant Hamm began questioning Mr. White about where he had been driving. When Ms. Torres asked Defendant Hamm what was happening, Defendant Hamm refused to answer her. Instead, Defendant Hamm ordered Mr. White to step out of the car before he could locate and produce his driver's license and proof of insurance.

**Unlawful Expansion of the Stop**

16.     Once Mr. White was out of the car, Defendant Hamm repeated his questions about where was Mr. White going and who he had been with. Mr. White said that he had given a ride to Brian Echternach and dropped him off.

17.     After questioning Mr. White, Defendant Hamm instructed him to sit in front of Defendant Hamm's squad car. Defendant Hamm then went back to the car to talk with Ms. Torres. While talking with Ms. Torres, Defendant Hamm requested another squad car.

18.     During the conversation with Defendant Hamm, Ms. Torres asked if she could have her boyfriend come and get her. Defendant Hamm told her she could not leave because her story "wasn't lining up" with what Mr. White had said.

**Unlawful Search of Mr. White**

19.     Defendant Hamm instructed Mr. White that he was going to pat him down and asked if Mr. White had anything that could cut Defendant Hamm. While searching Mr. White, Defendant Hamm continued to question him about whom he had dropped off. Mr. White then said it was a person named Brandon. Defendant Hamm asked if this was Brandon Eden. Mr. White said he did not know Mr. Eden.

20.     Defendant Hamm removed Mr. White's hat. In the brim of the baseball hat, Defendant Hamm found a small package of drugs.

21.     After finding drugs, Defendant Hamm and another officer declared that they were going to search Mr. White, including his shoes. Defendant Hamm explained that since he believed that Mr. White had been lying to them the entire time, they did not trust him or believe him.

22.    At around this time Defendant Douty arrived on scene. Defendant Hamm placed Mr. White in the back of his squad car.

**Unlawful Search and Seizure of Ms. Torres**

23.    Defendant Hamm told Ms. Torres that he believed what she told him in response to his questions, that he did not think she was lying, but that nonetheless his female partner, Defendant Douty, was going to search her.

24.    Defendants Hamm and Douty removed Ms. Torres from the car at 12:50 a.m. so that Defendant Douty could search Ms. Torres while an unknown third officer who was now on the scene could search the car.  Defendant Hamm remained close to Ms. Torres at all times and watched the search.  Ms. Torres was told to stand next to Defendant Hamm's squad car, which was out of the view of Defendant Hamm's squad-car camera.  During the search, Ms. Torres informed both Defendants Hamm and Douty that she was cold. She was wearing leggings that were not warm and Defendant Douty made her remove her coat for the search.

25.    Ms. Torres was extremely uncomfortable about the unlawful search Defendant Douty was conducting.  At the beginning of the search, Mr. Torres informed Defendants Hamm and Douty three times that she was not wearing underwear. Nonetheless, Defendant Douty's search was so uncomfortable that Mr. Torres complained that it felt like Officer Douty was "grabbing [her] crotch."

26.    As soon as Ms. Torres expressed that she did not consent to the search, Defendants Hamm and Douty began verbally abusing Ms. Torres for approximately the next 20 minutes.  Ms. Torres repeatedly asked — and at times, begged — Defendants

Hamm and Douty not to do an invasive search on the side of the freeway. They refused to listen to her. Ms. Torres repeatedly told Defendants Hamm and Douty that she was cold.

27. After Ms. Torres complained that Defendant Douty was touching and probing Ms. Torres vagina, Defendants Hamm and Douty loudly berated Ms. Torres. Defendant Hamm then handcuffed her at 12:55 a.m.

28. Defendant Douty claimed that she felt something while searching Ms. Torres's vagina but did not know what it was. Defendant Douty did not think it was a weapon and suspected it might be a baggie. Defendant Douty yelled at Ms. Torres, "What do you have down there?" Ms. Torres replied that she had nothing, that she was not wearing underwear, and asked if they wanted to take her down to the station to search her.

29. Defendant Hamm said they would not do that because, despite Ms. Torres already being in handcuffs and in police custody, she would "ditch it."

30. Defendant Douty again demanded that Ms. Torres tell her what she had "down there." Ms. Torres again told her that she was uncomfortable. "I have no underwear on and I feel like you are putting your hands in me and stuff. I'd rather just go get strip searched the right way and everything." Defendant Hamm called her a liar.

31. Defendants Hamm and Douty berated Ms. Torres because she objected to an invasive search on the side of the road. Ms. Torres again asked them to take her to the police station. Defendant Hamm refused. Defendant Douty again asked Ms. Torres what she had inside her. Ms. Torres again said she had nothing, and she objected to Defendant Douty's "putting your hands up in me." Defendant Hamm stated that Ms. Torres was not wearing panties because she was hiding something in her vagina.

32.     Ms. Torres again asked that they sort this out the right way and not on the side of the road.  Instead, Defendants Hamm and Douty, despite knowing that Ms. Torres did not want to be searched on the side of the road, started searching Ms. Torres's body again, without her consent and despite her objection.

33.     While searching Ms. Torres, Defendant Douty asked, "What do you have in your pants?"  To which Ms. Torres responded, "Nothing, but I'd appreciate it if you wouldn't stick your hands all up in me."

34.     Defendant Douty screamed at Ms. Torres, "What do you have?"  Ms. Torres said she had nothing and again asked them to take her to the police station.

35.     Both Defendants Hamm and Douty refused Ms. Torres's pleas.  Instead, they forced her to widen her legs.  Defendant Hamm screamed at Ms. Torres.  Plaintiff pleaded for basic dignity and this exchange occurred at 12:55 a.m.:

Ms. Torres: "I don't think you can do that to me."

Defendant Douty: "It's called a search."

Ms. Torres: "Yeah but can you take me down there [to the police station] and search me?"

Defendant Douty: "What difference does it make?"

Ms. Torres: "Because I am freezing, and I don't have any panties on."

Defendant Douty: (Yelling) "We would have been done by now if you were cooperating.  Knock it off."

36. Defendant Hamm continued to insist that Ms. Torres permit an unconstitutional search, demanding that she move her legs apart. Ms. Torres responded, "I'm begging you guys to take me down the right way and treat me the right way."

37. Defendants Hamm and Douty pressed Ms. Torres down over the front of the squad car, which briefly put her head into view of Defendant Hamm's squad camera. Ms. Torres again asked them to treat her the right way but Defendants Hamm and Douty refused. Ms. Torres asked Defendant Douty to not put her hands in Ms. Torres's vagina, but Defendant Douty refused to listen and did it anyway.

38. Despite pinning her to the car and having Defendant Hamm hold her, Defendant Douty was unable to find anything in her search. Defendant Douty and Defendant Hamm asked Ms. Torres what was in her vagina. She told them that there was nothing there but now asked that Defendants Hamm and Douty bring her to the hospital to be searched there.

39. Defendants Hamm and Douty refused, claiming that they could feel "something in your crotch." Defendant Hamm instructed Ms. Torres to spread her legs again. Plaintiff pleaded with the Defendants Hamm and Douty, saying, "Why won't you guys take me in the right way? What you're doing ain't right." Ms. Torres again insisted that they take her to the police station or hospital.

40. Defendant Douty asked Defendant Hamm what he wanted to do. Ms. Torres again asked them to take her in and treat her the right way. Defendant Hamm considered driving her but said that someone would have to ride with her.

41.     Ms. Torres said she would ride with them and that she was cold.  However, Defendant Hamm was not done humiliating Ms. Torres for the evening.  Noticing Mr. Torres's "tight pants", Defendant Hamm claimed that if Ms. Torres rode with them something would fall out of them.  Ms. Torres told them that this was ridiculous and that she could jump up and down.  Defendant Hamm noted that her legs were apart and asked her again to let Defendant Douty proceed with the vaginal search.

42.     Ms. Torres again refused, stating, "Because she doesn't have the right to put her hand in my vagina."  This was as clear as possible communication from Ms. Torres to Defendants Hamm and Douty that she had rights and they were violating them without her consent.

43.     Defendant Hamm stated that since Defendant Douty could feel something even though neither officer knew what it could be, they could continue to search her.  Defendant Douty said, "It's something.  I feel something.  I don't know what the hell it is."

44.     Defendant Hamm ignored everything Ms. Torres said.  Instead, he replied, "So are you going to let my partner search you or no?"  Ms. Torres again said that she wanted them to take her to the station.  Defendants Hamm and Douty again refused.  Defendant Hamm asked her why she wanted to be taken to the station, to which Ms. Torres respectfully responded that she wanted them to search her "properly instead of on the side of the road.  I'm cold sir."

45.     Instead of respecting her request, Defendants Hamm and Douty continued to insist that Ms. Torres submit to an unconstitutional search.  They claimed that Ms. Torres would dispose of whatever she had in her vagina.  Ms. Torres pleaded with Defendants

Hamm and Douty to treat her with respect and in accordance with law. Ms. Torres was extremely distraught and feeling helpless. She said, "This is crazy. I can't believe this is happening."

46.     At 12:58 a.m., Defendant Douty stated she would try to "loosen" whatever she thought was in Ms. Torres's vagina and began to massage Ms. Torres's vagina. Ms. Torres objected immediately, reminding Defendant Douty "I have no underwear on, I feel extremely violated right now." Defendant Douty responded only that, "I feel something."

47.     Ms. Torres again told Defendants Hamm and Douty that what they were doing was not right and that they should take her to the station.

48.     Defendant Hamm then suggested that they put her in the back of Defendant Douty's squad car where Defendant Hamm, and not the female Defendant Douty, could sit with her. Ms. Torres said again that Defendants Hamm and Douty's behavior "was nuts."

49.     Defendant Hamm blamed Ms. Torres for the problem. Defendant Hamm said that, had Ms. Torres submitted to a cavity search on the side of the road, she would at least have been able to put her coat back on.

50.     Ms. Torres told Defendant Hamm that she had been calm the entire time, which Defendant Hamm took as an opportunity to ask her, yet again, to let Defendant Douty search her on the side of the road. Ms. Torres again refused to consent to such a violation and requested going to the station instead. Defendant Hamm yelled at her and asked what going to the station had to do with anything.

51.     Ms. Torres responded, "You can ride with me in the car, because I'm cold and I don't want her sticking her hands in my vagina out here. I have no problem getting

naked at the police station in a cell or whatever. I'm good then. I'm just really cold." Defendant Hamm admitted that he was cold too, even though he was wearing a coat.

52. Ms. Torres again asked if they could take her to the station. Instead of answering her, Defendant Hamm talked to Defendant Douty. While doing so, Ms. Torres said she was not hiding anything. Defendant Hamm took that as an opportunity to try searching her again. He told Ms. Torres to "put your legs open like that and let my partner search you."

53. At 1:01 a.m., this conversation occurred:

Ms. Torres: "I don't want her hands all up in my vagina."

Defendant Hamm: "How else are we going to search you when she feels a baggie in your crotch?"

Ms. Torres: "She don't feel a baggie in my crotch, but if we go down there, then she can search me. Whatever, I can squat and cough and get undressed the right way you know, like instead of on the side of the highway. I'll jump up and down, look."

Defendant Hamm to Defendant Douty: "You want me to drive? You want me to drive your car?"

Ms. Torres: "Will you please just take me down there?"

Defendant Hamm: "Open your legs."

Ms. Torres: "This isn't right I don't think."

Defendant Hamm: "Open your legs, now."

Ms. Torres: "You're harassing me."

Defendant Hamm: (yelling) "Open your legs."

Ms. Torres: "Jesus Christ, you're not going to put her hand in my crotch, there's nothing hanging out. Dude, nothing is going to fall out, I want you to do this the right way."

Defendant Hamm: "This is the right way."

54.     Ms. Torres again told them that they should, "follow the law, arrest me and take me in to search me." Ms. Torres reminded them that she was cold and asked if they would let her have her jacket. Defendant Hamm simply said no to that request. Ms. Torres again told them what they were doing was not right.

55.     Defendants Hamm and Douty continued to punish Ms. Torres for asserting her rights. Ms. Torres told Defendants Hamm and Douty that she was very cold. Defendant Hamm said he did not care. He said, "No, you lost your privileges now, you're going to stand out here and be cold with us."

56.     Plaintiff said she didn't understand what he meant by losing her privileges. Defendant Hamm clarified that she wasn't getting her a coat "because you won't allow us to search you."

57.     Plaintiff again said she did not want to be searched on the side of the road and asked to be brought to the station to be searched. Defendants Hamm and Douty did not bring her to the station.

58.     Defendants Hamm and Douty then questioned Ms. Torres about Mr. White and his activities and accused Ms. Torres of coming to buy drugs. This was the first time since being removed from the car that Defendants Hamm and Douty asked her about Mr.

White.  Defendants Hamm and Douty never asked her about the air freshener that Defendant Hamm claimed was the reason for the stop.

59.     Ms. Torres asked Defendants Hamm and Douty to call someone to verify her story but Defendant Hamm said he would not investigate because "you burnt your bridge."

60.     Ms. Torres again asked if they would put her inside a car where she could get warm, but Defendant Hamm told her no.

61.     Ms. Torres, after a long night of being violated by officers on the side of the road, began to cry and repeated her request to be put somewhere warm.  Defendant Hamm said that, because she was fighting the search, she could not go into the car.

62.     At 1:05 a.m., Defendant Hamm told Defendant Douty that he could shine a flashlight on Ms. Torres's vagina for Defendant Douty in order to help her search.

63.     Ms. Torres immediately objected to that proposal and again asked them to do things the right way.  Defendant Douty said, "We are doing it the right way, if you would have cooperated we would have been done by now."  Defendant Hamm told her, "You would have been a long time in a warm vehicle but you're not cooperating."

64.     Defendants Hamm and Douty's actions throughout this incident clearly indicated that Ms. Torres's dignity did not matter and that they could punish her any way they wanted.

65.     Defendants Hamm and Douty continued to question Ms. Torres about her night.  Ms. Torres again said that she was cold and asked if they would take her down and search her the right way.

66.     Defendant Hamm said they did not have another car right now so she should just let Defendant Douty search her.  Ms. Torres refused.

67.     Ms. Torres again told them that she was "really cold."  Defendant Hamm both validated and dismissed her concerns again by saying, "I'm cold too, it's cold out, that's why we're cold."  Ms. Torres asked to get in the squad car but Defendant Hamm simply said, "Nope."

68.     Defendants Hamm and Douty then talked between themselves.  After a few minutes, Ms. Torres asked if they cared that she was freezing to death.

69.      Defendant Hamm told Ms. Torres that she was mixed up in the arrest, but admitted that so far she was not under arrest. Ms. Torres, however, was handcuffed and unable to leave, and Defendant Hamm had already refused to allow anyone to pick her up.

70.     Defendants Hamm and Douty then radioed to see if another deputy or a state trooper could come to assist them.  Ms. Torres asked why she could not get into the car since she was in hand cuffs.  Defendant Douty said that Ms. Torres would reach into her pants and get rid of whatever she had.  Ms. Torres was stunned, asking, "And get rid of it in the cop car?"  Defendant Hamm said, "Yeah, exactly."

71.     After dispatch informed them that no one was able to come, Defendant Hamm told Ms. Torres that he was wearing pants too and that he was cold.  Ms. Torres told him that her "hands are so cold."  Defendant Hamm said that she just had to let Defendant Douty search her. Ms. Torres again refused. Upset over Ms. Torres refusing to consent to an unlawful search, Defendant Hamm told her that "this is all your doing."  Ms.

Torres told Defendant Douty that she couldn't feel her hands anymore. Defendant Douty responded by saying, "It's ten degrees out, it happens."

72.    Eventually, Defendants Hamm and Douty got another car to come and pick up Mr. White. Defendant Hamm moved Ms. Torres's and Mr. White's possessions into the squad car, but still refused to let Ms. Torres into a car.

73.    While standing next to his squad car, Defendant Hamm again questioned Ms. Torres about her night.

74.    At 1:22 a.m., another officer came up to Defendant Hamm. The new officer remarked "It's freezing." Both officers blamed Ms. Torres for her predicament. This conversation occurred:

Ms. Torres: "You guys know it's not even fucking 10 degrees out right now."

New officer: "It's freezing outside. You know what we are freezing too."

Defendant Hamm: "You made this, you made this decision."

Ms. Torres: "No, I did not."

Defendant Hamm: "Yes you did because you didn't allow my partner to search you."

Ms. Torres: "I know the law, but you can take me down there and search me, you don't search somebody on the side of the fucking road when it's below zero. There's no sense in it."

75.    Defendant Hamm responded that he searched Mr. White, and the new officer told her that it did not matter how cold it was, she had to be searched.

76.     Ms. Torres again asked Defendants Hamm and Douty to take her to the station. Defendant Hamm replied that they were working on it.

77.     After talking with Ms. Torres, Defendants Hamm and Douty finally brought her to Deputy Douty's car where she was placed in the back seat.

78.     Defendants Hamm and Douty kept Ms. Torres outside without a coat for over 30 minutes. According to the National Weather Service, the temperature was 9 degrees Fahrenheit with a 12mph wind, making the wind chill -6 degrees Fahrenheit.

**Unlawful Search at the Hospital**

79.     Defendant Douty brought Ms. Torres to a hospital where Defendant Douty instructed a nurse to search and remove what turned out to be a pipe from Ms. Torres's vagina.  On information and belief, Defendant Douty did not have a warrant for the search.

**Subsequent Legal Matters**

80.     Ms. Torres was charged with possession of drug paraphernalia. On February 16, 2019, Defendant Rock County filed a motion to dismiss the criminal charges filed against Ms. Torres based upon "further review of the case files and in consideration of omnibus issues raised by the defense."

81.     On information and belief, after the case was dismissed, Defendant Verbrugge failed to investigate the conduct of his deputies.

**Warrantless Strip Searches and Body Cavity Searches**

82.     Ms. Torres was detained because she was the passenger in a car pulled over for an alleged air freshener hanging from its rearview mirror.

83.     Neither Defendant Hamm nor Defendant Douty had probable cause to

believe Ms. Torres was concealing a weapon, evidence of the commission of a crime, or contraband.

84.     Neither Defendant Hamm nor Defendant Douty had particularized reasonable suspicion to believe Ms. Torres was concealing a weapon, evidence of the commission of a crime, or contraband.

85.     There were no exigent circumstances requiring the search to be conducted without a warrant on a public on-ramp to a busy major interstate highway.

86.     Neither a strip search nor a full body cavity search was necessary for officer safety.

87.     Prior to the search Ms. Torres was detained but not under arrest, and Ms. Torres was not a convicted prisoner.

88.     Neither Defendant Hamm nor Defendant Douty had a search warrant for Ms. Torres's person.

**Failure to Train by County**

89.     On information and belief, Rock County deputies routinely engage in pretextual stops under the Fourth Amendment after having observed a car either near a suspected drug location, or driven by a person with previous criminal activity relating to drug use.

90.     In such pretextual stops, there is generally no reasonable, articulable grounds for suspecting a passenger in the vehicle possesses narcotics, weapons, or contraband.

91.     The Rock County Sheriff's Office has no policy to guide officers in

pretextual stops, and does not train officers on what to do in such situations.

92.     The risk of unconstitutional strip searches and/or body cavity searches for narcotics and/or contraband is so obvious that the County's failure to train its deputies on what searches are permissible in this type of recurring pretextual traffic stop situation was the moving force behind the unlawful and prolonged seizure and search of Ms. Torres.

**Damages**

93.     Ms. Torres suffered and continues to suffer:

    a.  Humiliation,

    b.  Indignity,

    c.  Disgrace,

    d.  Stress,

    e.  Fear,

    f.  Embarrassment,

    g.  Mental suffering,

    h.  Fear of police.

94.     The actions of Defendants and each of them proximately caused all the damages Ms. Torres suffered and will suffer in the future.

**Punitive Damages**

95.     The actions of Defendants Hamm and Douty in subjecting Ms. Torres to an unlawful and prolonged seizure and unlawful search of Ms. Torres's vagina and forcing her to stand in below-zero wind-chill without a coat shocks the conscience and is reprehensible.

96.     The actions of Defendants Hamm and Douty were undertaken with knowledge that Ms. Torres did not consent to their conduct and that such conduct violated the United States Constitution, the Minnesota Constitution, and Minnesota law.

97.     The search of Ms. Torres's body was proximately caused by Defendant Hamm, who made the call for a female officer – Defendant Douty, who conducted the search with no legal justification to do so.

98.     The conduct of Defendant Hamm was unlawful and is capable of repetition, which must be deterred.

99.     The conduct of Defendant Douty was unlawful and is capable of repetition, which must be deterred.

100.    As such Ms. Torres is entitled to punitive damages against Defendant Hamm and Douty.

### COUNT I
### VIOLATION OF CIVIL RIGHTS, 42 U.S.C. §1983
### FOURTEENTH AMENDMENT – SUBSTANTIVE DUE PROCESS
### AGAINST DEFENDANTS HAMM AND DOUTY

101.    Ms. Torres incorporates all prior paragraphs by reference as if fully set forth herein.

102.    Ms. Torres makes a claim under 42 U.S.C. § 1983 for violation of the Fourteenth Amendment of the Constitution of the United States.

103.    The search of Ms. Torres was proximately caused by Defendant Hamm calling for a female deputy – Defendant Douty – to perform the search.

104.    The circumstances of the warrantless roadside prolonged seizure of Ms.

Torres and warrantless body cavity search by Defendant Douty were so egregious and so outrageous that it shocks the contemporary conscience.

105. The conduct of Defendant Douty was the natural result of Defendant Hamm's call for a female deputy.

106. Defendant Hamm and Defendant Douty violated Ms. Torres's established right to substantive due process.

107. Defendant Hamm has no qualified immunity because Ms. Torres's right to be free from an unreasonable prolonged seizure and warrantless body cavity search on the side of the road was clearly established at the time.

108. Defendant Douty has no qualified immunity because Ms. Torres's right to be free from an unreasonable prolonged seizure and warrantless body cavity search on the side of the road was clearly established at the time.

109. In the alternative, even if Defendants Hamm and Douty had probable cause to believe Ms. Torres had narcotics or contraband on her person (which they did not), there were far less intrusive search methods they could have used.

110. As a direct result of the actions of Defendants Hamm and Douty, Ms. Torres suffered the damages described above.

**COUNT II**
**VIOLATION OF CIVIL RIGHTS, 42 U.S.C. §1983**
**FOURTH AMENDMENT - UNREASONABLE SEARCH AND SEIZURE**
**AGAINST DEFENDANT DOUTY AND DEFENDANT HAMM**

111. Ms. Torres incorporates all prior paragraphs by reference as if fully set forth herein.

112.     Ms. Torres makes a claim under 42 USC § 1983 for violation of the Fourth Amendment of the Constitution of the United States.

113.     The seizure and warrantless search of Ms. Torres by Defendants Hamm and Douty was unreasonable under the Fourth Amendment in that:

    a.   There was insufficient justification for the prolonged seizure of Ms. Torres

    b.   There was insufficient justification for initiating the search.

    c.   The scope of the search and seizure was unreasonable.

    d.   The place in which the search was conducted was unreasonable.

    e.   The manner in which the search was conducted was unreasonable.

    f.   Defendants Hamm and Douty lacked reasonable suspicion, much less probable cause, to seize and search Ms. Torres in the intrusive manner that they did.

    g.   There were no exigent circumstances requiring the search immediately on the side of the road.

    h.   There was no exception to the warrant requirement for the search.

114.     Ms. Torres's conduct did not justify the prolonged seizure and roadside search that occurred in this case.

115.     Defendants Hamm and Douty violated Ms. Torres's established right to be free from prolonged seizures and unreasonable searches.

116.     Defendants Hamm and Douty cannot rely upon qualified immunity because Ms. Torres's right to be free from prolonged seizures and/or unreasonable searches, of the sort that occurred here, was clearly established at the time.

117.    As a direct result of the actions of Defendant Hamm and Douty, Ms. Torres suffered the damages outlined above.

**COUNT III**
**VIOLATION OF CIVIL RIGHTS, 42 U.S.C. §1983**
**FOURTH AMENDMENT – EXCESSIVE FORCE**
**AGAINST DEFENDANTS HAMM AND DOUTY**

118.    Ms. Torres incorporates all prior paragraphs by reference as if fully set forth herein.

119.    Ms. Torres makes a claim under 42 U.S.C § 1983 for violation of the Fourth Amendment of the Constitution of the United States.

120.    The right to be free from excessive force in the context of an arrest is clearly established under the Fourth Amendment.

121.    Defendants Hamm and Douty's use of force against Ms. Torres was excessive and unreasonable.

122.    As a direct result of the actions of Defendant Hamm and Douty, Ms. Torres suffered the damages outlined above.

**COUNT IV**
**VIOLATION OF CIVIL RIGHTS, 42 U.S.C. §1983**
***MONELL* - FAILURE TO TRAIN**
**AGAINST DEFENDANTS ROCK COUNTY AND SHERIFF EVAN VERBRUGGE**

123.    Ms. Torres incorporates all prior paragraphs by reference as if fully set forth herein.

124.    At all times relevant, Defendants Rock County and Sheriff Verbrugge had a duty to properly train, supervise, and discipline Defendants Hamm and Douty.

125. Rock County and Sheriff Verbrugge breached that duty, by, inter alia:

   a. Improperly training, authorizing, encouraging or directing officers on proper search and use-of-force policy.

   b. Failing to discipline officers for violations of law and policy related to illegal search and use of force.

126. The policy, pattern of practice, or custom of unconstitutional conduct is tacitly or overtly sanctioned, as evidenced by the conduct of Defendants Douty and Hamm and the failure of the County, through the Sheriff's Office, and Sheriff Verbrugge to train, supervise, investigate, and discipline deputies.

127. The unconstitutional behavior of Defendant Hamm and Defendant Douty in this matter has been carried out pursuant to a policy, pattern of practice, or custom, whether formal or informal, which violates the constitutional rights of persons such as Ms. Torres.

128. Defendant Sheriff Verbrugge failed to take sufficient remedial actions to end this policy, pattern of practice, or custom within the Sheriff's office.

129. The failure to end this policy, pattern of practice, or custom was a proximate cause of the damages suffered by Ms. Torres.

130. As a direct result of the actions of Defendants, Ms. Torres suffered the damages outlined above.

## COUNT V
## MINNESOTA CONSTITUTION ART 1 § 10 – UNLAWFUL SEARCH AND SEIZURE
## AGAINST ALL DEFENDANTS

131. Ms. Torres incorporates all prior paragraphs by reference as if fully set

forth herein.

132. Defendants Hamm and Douty subjected Ms. Torres to an unlawful search and seizure in violation of the Minnesota Constitution, Article 1, § 10, in that Defendants Hamm and Douty detained Ms. Torres without lawful authority and without judicial review, and conducted a warrantless, invasive search of her person.

133. As a proximate result of Defendants' unconstitutional policies, practices, customs, lack of supervision, failure to train, acts, and omissions, done under color of law and official authority, Ms. Torres suffered significant deprivations of her constitutional rights detailed in the preceding causes of action, and her Article 1 § 10 Minnesota constitutional right to be free from unreasonable searches and seizures. The failure to train was done with such deliberate indifference on the part of Defendants Rock County and Sheriff Verbrugge that these constitutional violations were inevitable. Defendants Rock County and Sheriff Verbrugge's policies, practices, customs, lack of supervision, failure to train, acts, and omissions were the moving force behind these constitutional violations and the cause of such violations.

134. As a direct result of the actions of Defendants, Ms. Torres suffered the damages outlined above.

### COUNT VI
### INTENTIONAL TORTS: ASSAULT, BATTERY, FALSE ARREST, FALSE IMPRISONMENT, INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS AGAINST ALL DEFENDANTS

135. Ms. Torres incorporates all prior paragraphs by reference as if fully set forth herein.

136. All of the individual Defendants named in this Complaint are employees, deputies, and agents of Defendant Rock County.

137. All acts of the individual Defendants alleged above were conducted within the scope of the individual Defendants' employment or duties.

138. The actions of Defendants were willful, malicious, and in violation of the known rights of Ms. Torres.

139. Ms. Torres's initial seizure by Defendant Hamm and Douty was not supported by law. Instead, Defendants Hamm and Douty seized Ms. Torres without any legal right, done under color of law and official authority, pursuant to official policy or custom and because of lack of supervision. Ms. Torres's seizure constitutes false imprisonment in violation of Minnesota law. Ms. Torres's seizure is a result of Defendants Rock County and Sheriff Verbrugge's unconstitutional policies, practices, customs, lack of supervision, failure to train, acts, and omissions, which were the moving force behind this state law violation and the cause of such violation. The failure to train was done with such deliberate indifference on the part of Defendants Rock County and Sheriff Verbrugge that this false imprisonment was inevitable.

140. Defendants Hamm and Douty intentionally confined and restrained Ms. Torres without her consent. Defendants Hamm and Douty intentionally confined Ms. Torres beyond the time permitted by law, and Ms. Torres did not consent to this unlawful detention. Ms. Torres requested to leave and was denied that right.

141. Defendants Hamm and Douty knew they had no lawful authority to seize Ms. Torres or to continue detaining Ms. Torres.

142.     Defendants Hamm and Douty committed assault and battery when they verbally threatened and then forcefully touched her without her consent and against her repeatedly stated wishes.

143.     The Defendants' extreme and outrageous conduct intentionally or recklessly caused severe emotional distress to Ms. Torres.

144.     Wherefore, as a direct and proximate cause of the actions of the Defendants, Ms. Torres has suffered damages in an amount to be determined at trial.

## DECLARATORY AND INJUNCTIVE RELIEF
## AGAINST ALL DEFENDANTS

145.     This suit involves an actual controversy within the Court's jurisdiction and the Court may declare the rights of Ms. Torres under the Constitution and laws of the United States and the Constitution and laws of Minnesota and grant such relief as necessary and proper.  Ms. Torres seeks declaratory relief under 28 U.S.C. §2201.

146.     Ms. Torres seeks a declaratory judgment that the Defendants' policies, pattern of practices, customs, lack of supervision, failure to train, acts, and omissions described herein violate the Fourth Amendment to the Constitution of the United States and constitute an unlawful search and excessive force in violation of the Minnesota Constitution and state law.

147.     The conduct of Defendants set forth in this Complaint is likely to continue and poses an imminent threat of future harm to Plaintiff unless restrained and enjoined by this Court.

## **PRAYER FOR RELIEF**

Wherefore, Ms. Torres respectfully requests that this Court enter judgment in favor of her and against the Defendants as follows:

A.      Declaring that the Defendants' policies, pattern of practices, customs, lack of supervision, failure to train, acts, and omissions, described herein, constituted unlawful search and excessive force in violation of the Fourth and Fourteenth Amendment and in violation of the Minnesota Constitution and state law;

B.      Permanently enjoining and prohibiting defendants from:

      a.   Retaliating against Ms. Torres for bringing this lawsuit; and

      b.   Subjecting Ms. Torres to unlawful seizures, searches and excessive force in the future;

C.      For recovery of reasonable damages sufficient to compensate her for the violation of her Fourth and Fourteenth Amendment rights and rights under the Minnesota Constitution and state law;

D.      Requiring the Defendants to pay Ms. Torres punitive and other exemplary damages;

E.      Requiring the Defendants to pay Ms. Torres's attorney's fees and costs as authorized by 42 U.S.C. § 1988; pre-judgment interest; and any other relief deemed necessary and proper;

F.      Requiring the Defendants to pay Ms. Torres's costs and distributions herein; and

G.      Grant all other and additional relief to which Ms. Torres may be entitled.

Dated: May 22, 2020

s/Ian Bratlie
Ian Bratlie (No. 319454)
American Civil Liberties Union of Minnesota
709 South Front Street, Suite 1B
Mankato, MN 56001
Tel: (651) 645-4097
ibratlie@aclu-mn.org

Teresa Nelson (No. 269736)
American Civil Liberties Union
of Minnesota
P.O. Box 14720
Minneapolis, MN 55414
Tel: (651) 645-4097
Fax: (651) 647-5948
tnelson@aclu-mn.org

*Counsel for Plaintiff Kelli Jo Torres*